1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10   DEBI HUMANN,                                    CASE NO. C13-101 MJP

11                      Plaintiff,                   ORDER ON MOTION TO AMEND,
                                                     MOTIONS FOR SUMMARY
12          v.                                       JUDGMENT

13   CITY OF EDMONDS et al.,

14                      Defendants.

15

16          THIS MATTER comes before the Court on Defendant City of Edmonds's Motion for

17   Summary Judgment (Dkt. No. 52), Defendant David Earling's Motion for Summary Judgment

18   (Dkt. No. 53), Defendant Micheal Cooper's Motion for Summary Judgment (Dkt. No. 54), and

19   Plaintiff Debi Humann's Motion to Amend the Complaint (Dkt. No. 64). Having read Humann's

20   Response to the City's Motion (Dkt. No. 52), the City's Reply (Dkt. No. 76); Humann's

21   Response to Earling's Motion (Dkt. No. 70), Earling's Reply (Dkt. No. 77); Humann's Response

22   to Cooper's Motion (Dkt. No. 71), Cooper's Reply (Dkt. No. 75); the City's Response to

23   Humann's Motion to Amend (Dkt. No. 66), Cooper's Response to Humann's Motion to Amend

24   (Dkt. No. 68), Humann's Reply (Dkt. No. 79); and all related papers; the Court hereby GRANTS

1   the Motion to Amend, GRANTS Earling's Motion for Summary Judgment solely because

2   Earling is entitled to qualified immunity for his actions, DENIES the City's Motion for Summary

3   Judgment including insofar as Earling's actions give rise to the City's liability for First

4   Amendment retaliation, and DENIES Cooper's Motion for Summary Judgment except insofar as

5   Plaintiff concedes he is not liable for First Amendment retaliation.

6

7                                              **Background**

8          Ms. Humann was Human Resources Director for the City of Edmonds beginning in 2008

9   and continuing under former Mayor Cooper. (Am. Compl., Dkt. No. 10 at 3; Humann Dep., Dkt.

10  No. 57 at 11.) During 2010 and 2011 Ms. Humann raised and/or relayed concerns about the

11  compensation, hours worked, timesheets, and vacation and sick leave of Mayor Cooper's

12  frequently absent executive assistant Kimberly Cole. (Cooper Dep., Dkt. No. 72 at 109–110,

13  114; Humann Decl., Dkt. No. 73 at 4–6.) Concerns about Ms. Cole's compensation and hours

14  were also raised in the press. (Cooper Dep., Dkt. No. 72 at 55–56.) Ms. Cole complained to

15  Mayor Cooper about Ms. Humann's interest in her work schedule, and Mayor Cooper directed

16  Ms. Humann to desist from monitoring Ms. Cole, but Ms. Cole was not wholly satisfied by his

17  response. (See id. at 119.)

18         In approximately August 2011, the Washington State Auditor's Office began to

19  investigate Ms. Cole's compensation after receiving an anonymous tip (which Ms. Humann

20  denies submitting). (Dkt. No. 73 at 8.) Ms. Humann cooperated with the investigation and

21  provided information to the Auditor on two occasions in September. (Id.) Soon afterward, the

22  mayor fired Ms. Humann. (Id. at 10.) At the same time, Mayor Cooper placed Ms. Cole on paid

23  administrative leave. (Cooper Dep., Dkt. No. 72 at 124.)

24

In conjunction with the firing, Mayor Cooper issued a statement via email to members of the City Council and the press:

> Debi Humann is no longer employed by the City. This is not a decision that came lightly but a change was needed.
> The city's ability to function relies on a relationship between the Mayor and staff that is based on the highest level of trust and confidentiality. That level of trust has deteriorated to a place where I no longer had confidence in her ability to do the job and to work effectively with me.
> In order to have the public trust the city needs a committed staff that maintains the highest level of trust with the mayor and council.

(Dkt. No. 55, Ex. 10 at 41; Williams Dep., Ex. 1, Dkt. No. 72-2, Ex. U at 103.)

Mayor Cooper gave a similar statement to the Seattle Times: "Over time there had been a series of events that just led to a breakdown in trust, and she couldn't work effectively as part of my team." (Cooper Dep., Ex. 11, Dkt. No. 72 at 169.)

Ms. Humann then retained counsel, filed a whistleblower complaint pursuant to state law and the policies of the City, and issued a press release about her actions. (Dkt. No. 73 at 11, 26–31.) The complaint and press release referred to Ms. Cole's hours and compensation and alleged "improper payroll practices." (Id. at 26.) The City launched an investigation into Ms. Humann's complaint as required by state law. (See Barrett Bloom Decl., Dkt. No. 26-5 at 2–6.) During the investigation, the election took place and Mayor Cooper was defeated by Mr. Earling. (Earling Decl. & Ex. C, Dkt. No. 59 at 4 & 13.) Before Mayor Earling took office, the Edmonds City Council voted to eliminate funding for the Human Resources Director position in the next year but left the final decision about staffing to the incoming mayor. (Edmonds City Council Minutes, Taraday Decl., Dkt. No. 58 at 53–61; Plunkett Dep., Dkt. No. 72, Ex. 2 at 4–6.) After Mayor Earling took office, he reviewed the situation and decided to temporarily reinstate Ms. Humann for the remainder of the year and then lay her off at the beginning of 2012, purportedly in deference to the City Council's elimination of the position. (See Earling Dep., Dkt. No. 72-1 at

1   6–7.) Mayor Earling gave out the following rationale in a press release from the Mayor's Office:

2   "Having been fully advised, I was not able to reach a conclusion that Mayor Cooper retaliated

3   against Debi Humann, but in light of various apparent misunderstandings between Mr. Cooper

4   and Ms. Humann, I am going to give Ms. Humann the benefit of the doubt. As a result, I am

5   reinstating Ms. Humann as the Human Resources Director for the remainder of the year. At the

6   end of the year, she will be laid off due to the City Council's elimination of the position." (Dkt.

7   No. 72-1 at 36.)

8        Meanwhile, a separation agreement Mayor Cooper had reached with Ms. Cole was

9   voided by the City Council. (Cooper Termination Memo, Dkt. No. 72 at 159–62; Bloom Decl.,

10  Ex. A.)

11       The City of Edmonds brings its Motion for Summary Judgment on Plaintiff's § 1983 due

12  process claim regarding her initial firing in conjunction with Mayor Cooper's allegedly

13  stigmatizing statements, Plaintiff's claim for defamation regarding Mayor Cooper's statements,

14  Plaintiff's First Amendment retaliation claim regarding the City Council's elimination of funding

15  for Plaintiff's position and Mayor Earling's actions in hiring and laying off Plaintiff, and

16  Plaintiff's claim for wrongful discharge in violation of public policy. (See Dkt. No. 52.) Former

17  Mayor Cooper seeks summary judgment on the same claims, though Plaintiff does not oppose

18  summary judgment on Mayor Cooper's liability for First Amendment retaliation. (See Dkt. No.

19  54; Dkt. No. 71 at 10–11 n.11.) Mayor Earling seeks summary judgment on the First

20  Amendment retaliation claim on the basis of qualified immunity. (See Dkt. No. 52.)

21       Finally, Plaintiff seeks leave to file a second amended complaint (Dkt. No. 64). Because

22  the proposed amendments relate to the wrongful discharge claim, they will be discussed in that

23  section.

24

**Discussion**

I.     Legal Standard

Federal Rule 56(a) provides that the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In determining whether a factual dispute requiring trial exists, the court must view the record in the light most favorable to the nonmovant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). All material facts alleged by the nonmoving party are assumed to be true, and all inferences must be drawn in that party's favor. Davis v. Team Elec. Co., 520 F.3d 1080, 1088 (9th Cir. 2008).

A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. There is no genuine issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

II.     Against City/Mayor Earling: First Amendment Retaliation

A public employee is entitled to protection against retaliation by the employer for speech on a matter of public concern. See Garcetti v. Ceballos, 547 U.S. 410, 417 (2006). To establish a prima facie case for First Amendment retaliation, Plaintiff must show she (1) spoke on a matter of public concern; (2) spoke as a private citizen and not within the scope of her official duties as a public employee; and (3) suffered an adverse employment action, for which her protected speech was a substantial or motivating factor. See Karl v. City of Mountlake Terrace, 678 F.3d 1062, 1068 (9th Cir. 2012). If the plaintiff meets her burden on these first three steps, the burden shifts to the government to show: (4) legitimate administrative interests outweigh the employee's

1  First Amendment rights; or (5) the employer would have taken the adverse employment action

2  even absent the protected speech. Id.

3         Plaintiff focuses on two potential adverse employment events: the elimination of funding

4  for her position by the Edmonds City Council and Mayor Earling's decision to rehire her and

5  then lay her off. (Dkt. No. 10 at 14–17.) Plaintiff concedes there was no First Amendment

6  retaliation on the part of Mayor Cooper. (Dkt. No. 71 at 10–11 n.11.)

7         A.  City Council and Legislative Motive

8         In its Motion for Summary Judgment, the City argues inquiry into the motivation of the

9  legislature is prohibited, meaning Plaintiff's claim regarding the elimination of her position in

10  the City Council budget would founder at step 3 (adverse employment action, speech was

11  substantial or motivating factor). (Dkt. No. 52 at 14–16.) The City is correct that courts generally

12  disfavor inquiry into legislative motive, and the Supreme Court has established certain doctrines

13  to prevent judicial interference with the legislative process. For example, in Bogan v. Scott

14  Harris, the Supreme Court established absolute immunity for local legislators against personal

15  liability for their legislative acts. 523 U.S. 22 (1998). (Contrary to the City's argument,

16  municipalities do not enjoy the same immunity. See Leatherman v. Tarrant County Narcotics

17  Intelligence & Coordination Unit, 507 U.S. 163, 166 (1993).) In addition, courts often find it

18  unnecessary to delve into the subjective motives of legislators to determine the constitutionality

19  of a generally applicable law. See City of Las Vegas v. Foley, 747 F.2d 1294, 1297–98 (9th Cir.

20  1984).

21         Still, motive is an indispensible part of the unique test for First Amendment retaliation,

22  and the City's argument would immunize even a baldly retaliatory city council decision from

23  constitutional review. This interpretation is unnecessary. The 9th Circuit has scrutinized multi-

24

1   member city councils for improper motive in other contexts. See, e.g., Kawaoka v. City of

2   Arroyo Grande, 17 F.3d 1227, 1239 (9th Cir. 1994).

3          Viewing the evidence in the light most favorable to Plaintiff, a jury could conclude that

4   the City Council decision to eliminate funding for Plaintiff's position was motivated by her

5   protected speech, namely, the whistleblower complaint and the October 13 press release. (For

6   discussion of public concern, see below.) Her actions were drawing negative attention to the City

7   and the Mayor's office while she was simultaneously seeking to be reinstated in her position, and

8   the vote took place just over a month after the protected speech, on the last council meeting

9   during Mayor Cooper's term. See Coszalter v. City of Salem, 320 F.3d 968, 977–78 (9th Cir.

10  2003) (permitting inference of retaliatory motive based on temporal proximity, expression of

11  opposition to the speech, or evidence that proffered explanations are false and pretextual).

12         B.  Mayor Earling's Actions

13         Because Earling was mayor, he had final policymaking authority on issues of

14  employment and any of his actions that constitute violations confer liability on the City.

15  Edmonds, Wash., Code ch. 2.01 (effective 1983); Monell v. Dep't of Soc. Servs., 436 U.S. 658,

16  694 (1978). He personally enjoys qualified immunity if a violation of Plaintiff's constitutional

17  rights was not clearly established at the time of the alleged misconduct. Saucier v. Katz, 533 U.S.

18  194, 201 (2001).

19         1.  Public Concern

20         The City joins Mayor Earling in arguing that the speech that allegedly led to retaliation

21  against Ms. Humann was not on a matter of public concern. (Dkt. No. 53 at 7.) The instances of

22  speech at issue are 1) the filing of the whistleblower complaint (Humann Decl., Dkt. No. 73 at

23  26) and 2) the October 13, 2011 press release (Humann Decl., Dkt. No. 73 at 27).

24

1    Although communications expressing a personal grievance about the loss of a job may

2    not always rise to the level of a public concern, Ms. Humann's whistleblower complaint and

3    press release clearly reference her concern over potential misuse of public funds, a quintessential

4    matter of public concern. (See Dkt. No. 73 at 1 ("Ms. Humann was terminated on September 22,

5    2011, in retaliation for her participation in an investigation, at the direction of the Washington

6    State Auditor's office, regarding improper payroll practices at the City of Edmonds."); id. at 2

7    ("The issue leading to her reporting to the State Auditor arose after a number of employees

8    raised concerns with Ms. Humann regarding another employee, who had worked previously with

9    the Mayor and was hired by him shortly after he was appointed. The general concern expressed

10   by the other employees was that the new employee was drawing a substantial salary but was

11   rarely present at work and had not submitted appropriate documentation supporting the payroll

12   expense, and was given unearned vacation time and sick time by the Mayor in contravention of

13   existing City policies.").) For his part, Mayor Cooper argues the layoff itself was a matter of

14   public concern. (Dkt. No. 54 at 15.) Indeed, Ms. Humann's complaint and press release led a

15   local newspaper to publish a story on her firing and Ms. Humann's underlying concerns

16   regarding Ms. Cole. (See Dkt. No. 73, Ex. 5.)

17      Cases where no allegation of misuse of public funds was at issue in an employee

18   grievance are thus inapplicable. See, e.g., Desrochers v. City of San Bernardino, 572 F.3d 703,

19   705–06 (9th Cir. 2009) (holding internal police department grievance alleging personality

20   conflict that affected operational efficiency and effectiveness was not a matter of public

21   concern); see also Borough of Duryea v. Guarnieri, 131 S. Ct. 2488, 2501 (2011) (remanding

22   Petition Clause case to the lower court for application of the public concern test).

23      Ms. Humann's speech in both instances related to a matter of public concern.

24

2.   Adverse Employment Action/Substantial or Motivating Factor

The City and Mayor Earling also argue Mayor Earling's simultaneous rehiring and laying off of Ms. Humann was not an adverse employment action on the part of Mayor Earling because his action was the rehiring, while the layoff was dictated by the budget decision of the City Council. (Dkt. No. 52 at 17; Dkt. No. 53 at 8–11.) Members of the City Council, however, did not see their actions as foreclosing any other option by the incoming mayor, instead believing that they were allowing the incoming mayor to make his own decision. (Plunkett Dep., Dkt. No. 72, Ex. 2 at 4–6.) Furthermore, as Plaintiff notes and Mayor Earling conceded in his deposition, Mayor Earling did make the choice to respond to the elimination of funding for a position by laying off Ms. Humann as opposed to another HR employee with less HR experience. (Dkt. No. 70 at 12–13; Earling Dep., Dkt. No. 72, Ex. 1 at 6–7, id. at 30.)

The standard for adversity is a relatively low bar: The action taken must be reasonably likely to deter employees from engaging in a protected activity under the First Amendment. Coszalter, 320 F.3d at 976. In context, the rehiring and layoff of Ms. Humann constituted an adverse employment action.

Plaintiff must show that the speech was a "substantial or motivating factor" in Mayor Earling's rehiring and lay off. The same context and timeline for the City Council's actions applies here. A jury could rationally infer that Mayor Earling's act—and attribution of the act to City Council rather than his own choice—was substantially motivated by Plaintiff's whistleblower claim and accompanying press release.

3.   Same Decision in Absence of Protected Speech

Finally, Mayor Earling argues he would have reached the same decision as to Ms. Humann's employment even if she had not engaged in the protected speech. (Dkt. No. 53 at 12.)

1    Mayor Earling was at the end of a chain of events which were occasioned by both Ms. Humann's

2    protected and potentially unprotected speech. And to the extent that Mayor Earling found that

3    Ms. Humann was partially "at fault" for her initial firing, he blames her excessive zeal on the

4    issue of Ms. Cole's attendance. (See Earling Dep., Dkt. No. 72, Ex. 1 at 12.) Only a jury can

5    entangle the disputed factual question whether Mayor Earling would have engaged in an adverse

6    employment action had Ms. Humann not brought her concerns about Ms. Cole's compensation

7    to the public and challenged her firing by Mayor Cooper as retaliatory.

8                                 4.   Qualified Immunity

9            Given the unique character of the action Mayor Earling chose to pursue, however, he is

10   entitled to qualified immunity because the alleged violation of Plaintiff's constitutional rights

11   was not clearly established at that time. The principle that misuse of public funds is a matter of

12   public concern was, on the one hand, clearly established at the time of Ms. Humann's statements.

13   See Johnson v. Multnomah County, 48 F.3d 420, 425 (9th Cir.1995) (citing Roth v. Veteran's

14   Admin., 856 F.2d 1401, 1405 (9th Cir.1988)) (The "misuse of public funds, wastefulness, and

15   inefficiency in managing and operating government entities are matters of inherent public

16   concern."). On the other hand, no court has specifically held that reappointing and laying off

17   someone pursuant to an independent action eliminating funding for the position constitutes an

18   adverse employment action. Cf. Dahlia v. Rodriguez, 735 F.3d at 1078–79 (holding that placing

19   someone on administrative leave could constitute an adverse employment action); Dahlia v.

20   Stehr, 491 Fed. Appx. 799, 801 (9th Cir. 2012) (reversing denial of qualified immunity for police

21   chief on basis that 9th Circuit had not previously decided whether placing someone on

22   administrative leave could constitute an adverse employment action). Mayor Earling therefore

23   had a good faith basis for believing that the employment action he took was not "adverse" under

24

1  First Amendment retaliation law. Still, because Mayor Earling's actions can give rise to

2  municipal liability, summary judgment cannot be granted to the City on the First Amendment

3  retaliation claim arising out of his actions. See Lore v. City of Syracuse, 670 F.3d 127, 164 (2d

4  Cir. 2012) (citing Kentucky v. Graham, 473 U.S. 159, 166–67 (1985)).

5      III.    Against the City and Mayor Cooper: Defamation

6          Plaintiff alleges Mayor Cooper defamed her through statements he gave to the press on

7  the occasion of her termination. The statements are as follows: 1) "Debi Humann is no longer

8  employed by the City. This is not a decision that came lightly but a change was needed. The

9  city's ability to function relies on a relationship between the Mayor and staff that is based on the

10 highest level of trust and confidentiality. That level of trust has deteriorated to a place where I no

11 longer had confidence in her ability to do the job and to work effectively with me. In order to

12 have the public trust the city needs a committed staff that maintains the highest level of trust with

13 the mayor and council." (Dkt. No. 55, Ex. 10 at 41; Williams Dep., Ex. 1, Dkt. No. 72-2, Ex. U

14 at 103); and 2) "Over time there had been a series of events that just led to a breakdown in trust,

15 and she couldn't work effectively as part of my team." (Cooper Dep., Ex. 11, Dkt. No. 72 at

16 169). The first statement was given as a written statement to the press and members of City

17 Council, while the second was reported by the Seattle Times.

18         When a defendant in a defamation action moves for summary judgment, the plaintiff has

19 the burden of establishing a prima facie case on each element of defamation. LaMon v. Butler,

20 112 Wn.2d 193, 197 (1989). The four elements are: (1) a false statement, (2) publication, (3)

21 fault, and (4) damages. Duc Tan v. Le, 177 Wn.2d 649, 662 (2013).

22     A.  Falsity

23         The court must initially decide, as a matter of law, whether the statement or

24 communication is capable of a defamatory meaning. Swartz v. World Pub'g Co., 57 Wn.2d 213,

215, 356 P.2d 97 (1960). Distinguishing between actionable fact and nonactionable opinion is part of this inquiry. See Robel v. Roundup Corp., 148 Wash.2d 35, 55 (2002). In Washington, to determine whether statements should be viewed as nonactionable opinion, courts consider "consider the 'totality of the circumstances' surrounding those statements: To determine whether a statement is nonactionable, a court should consider at least (1) the medium and context in which the statement was published, (2) the audience to whom it was published, and (3) whether the statement implies undisclosed facts." Id. at 56 (quotation marks and citation omitted); see also Underwager v. Channel 9 Australia, 69 F.3d 361, 366 (9th Cir. 1995) ("To determine whether a statement implies a factual assertion, we examine the totality of the circumstances in which it was made. First, we look at the statement in its broad context, which includes the general tenor of the entire work, the subject of the statements, the setting, and the format of the work. Next we turn to the specific context and content of the statements, analyzing the extent of figurative or hyperbolic language used and the reasonable expectations of the audience in that particular situation. Finally, we inquire whether the statement itself is sufficiently factual to be susceptible of being proved true or false.").

The context of Mayor Cooper's speech was sober and formal; in tone, it suggested a great deal of consideration had gone into the phrasing. There is nothing about the context of either the emails to members of the press and City Council or the Seattle Times article that suggests the statements were made in a heated moment or as part of the type of campaign speech that the reader or audience would expect to contain an element of exaggeration, despite the fact that a mayoral election campaign was in process. Cf.  Camer v. Seattle Post Intelligencer, 45 Wn. App. 29, 40 (1986) ("Even apparent statements of fact may assume the character of opinions, and thus be privileged, when made in public debate, heated labor dispute, or other circumstances in which

1  an audience may anticipate efforts by the parties to persuade others to their positions by use of

2  epithets, fiery rhetoric or hyperbole. . . . In other words, both the immediate as well as broader

3  social context in which the statements occur should be considered."). A post hoc explanation for

4  an employee's termination, particularly one given to reporters in a written statement, may be

5  made in a political context without taking on the character of hyperbolic campaign speech.

6        The City argues Plaintiff cannot establish falsity because Mayor Cooper's statements

7  were substantially true—that trust had broken down between Mayor Cooper and Plaintiff and the

8  city needs staff relationships that are based on the highest level of trust with the mayor and

9  council. (Dkt. No. 52 at 22–23.) However, in the Seattle Times statement Mayor Cooper alludes

10 to an unspecified "series of events" that led to this subjective breakdown in trust. (See Cooper

11 Dep., Ex. 11, Dkt. No. 72 at 169.) In addition, Mayor Cooper's most generic statement clearly

12 implies that Plaintiff was not able to maintain "the highest level of trust and confidentiality" that

13 is required of public servants, but does not disclose the facts supporting that conclusion. (See

14 Dkt. No. 55, Ex. 10 at 42.) Such statements of opinion can be actionable insofar as they imply a

15 false assertion of fact. See Duc Tan, 177 Wn.2d at 663 (citing Milkovich v. Lorain Journal Co.,

16 497 U.S. 1, 18–19 (1990)). Courts have found such implied facts in statements regarding

17 plaintiffs' trustworthiness. See, e.g., Rhea v. Dollar Tree Stores, Inc., 2005 WL 2600213, *11

18 (W.D. Tenn. Oct. 12, 2005) ("[C]alling someone a . . . an untrustworthy employee is sufficiently

19 specific to imply that the victim has committed particular acts that society has determined to be

20 improper."); see also Wood v. Battle Ground Sch. Dist., 107 Wn.App. 550, 572 (2001) (holding

21 that a statement that the plaintiff's job performance was "lacking" "implied there were provable

22 facts to support his conclusion that Wood's performance as communications coordinator was

23 lacking").

24

1    Neither the City nor Mayor Cooper is entitled to summary judgment on the basis that his

2    statements were either true or not falsifiable. The jury must decide whether the statements were

3    indeed false.

4    B.  Privilege

5    The City argues Mayor Cooper is entitled to absolute privilege for his statements, but can

6    point to no Washington caselaw giving municipal leaders an absolute privilege. See Bender v.

7    City of Seattle, 99 Wn.2d 582, 600 (1983) ("Absolute privilege is usually confined to cases in

8    which the public service and administration of justice require complete immunity. Legislatures in

9    debate, judges and attorneys in preparation or trial of cases, statements of witnesses or parties in

10   judicial proceedings, and statements of executive or military personnel acting within the duties of

11   their offices are frequently cited examples."). Meanwhile, a qualified privilege would merely

12   institute the actual malice standard which Plaintiff already admits applies by virtue of her status

13   as a public figure. Id. at 601. (See Dkt. No. 71 at 15.) The Court therefore need not decide

14   whether municipal leaders merit qualified immunity in the absence of Washington cases on the

15   subject.

16   C.  Fault

17   Because Plaintiff concedes that for the purposes of this case she is a public figure, the

18   level of fault that she must prove with clear and convincing evidence is actual malice, i.e., that

19   the Mayor knew that the statement was false or acted with reckless disregard of its truth or

20   falsity. New York Times v. Sullivan, 376 U.S. 254, 279–80 (1964). The Supreme Court has

21   further clarified that reckless disregard means the defendant "must have made the false

22   publication with a high degree of awareness of probable falsity [ . . . ] or must have entertained

23   serious doubts as to the truth" of the statement. Harte-Hanks Communications, Inc. v.

24   Connaughton, 491 U.S. 657, 667 (1989) (quotation marks and alterations omitted). The Court

1    notes that the City's original Motion appears to misinterpret the relevant case law: Even

2    assuming Mayor Cooper's statements were made in order to state his reasons for termination, if

3    he also knew those reasons were false or acted in reckless disregard of their falsity, he may be

4    liable for defamation. See Dkt. No. 52 at 23–24 ("There is no evidence Cooper's statements were

5    made for any other reason [than] to state his reasons for termination, not malice.")).

6        Plaintiff argues that even to the extent Mayor Cooper believed the alleged false facts

7    underlying the "breakdown in trust," he acted in reckless disregard of their falsity because he

8    was relying on a biased or hostile source of information (Ms. Cole) and failed to investigate their

9    veracity. (See Dkt. No. 71 at 15–16.) Washington case law makes clear these facts could support

10    a verdict of actual malice if they cumulatively amount to clear and convincing evidence of the

11    same. See Duc Tan, 177 Wn.2d at 669 (2013) (noting that circumstantial evidence pointing to the

12    defendant's knowledge that a source of information about a plaintiff is hostile and failure to

13    properly investigate an allegation can give rise to actual malice).

14        Mayor Cooper's only argument on fault is that Ms. Humann shared his superficial

15    opinion that trust had broken down between them. (Dkt. No. 54 at 17; Dkt. No. 75 at 7.) He does

16    not address any undisclosed facts that may have been implied by his statement. In its Reply, the

17    City follows this analysis as well. (Dkt. No. 76 at 12.) These arguments do not legally foreclose

18    the possibility that Mayor Cooper acted in reckless disregard of the falsity of the alleged acts or

19    events leading to the breakdown in trust.

20        D.  Damages

21        Plaintiff argues Mayor Cooper's statements were libelous per se, and that damages may

22    therefore be presumed. (Dkt. No. 71 at 18.) "A defamatory publication is libelous per se

23    (actionable without proof of special damages) if it (1) exposes a living person to hatred,

24    contempt, ridicule or obloquy, to deprive him of the benefit of public confidence or social

1 intercourse, or (2) injures him in his business, trade, profession or office." <u>Caruso v. Local Union</u>

2 <u>No. 690 of Int'l Bros. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.</u>, 100 Wn.2d

3 343, 353 (1983). In cases where the statement does not touch upon a criminal offense involving

4 moral turpitude, but instead deals in murkier areas such as "public confidence, injury to business,

5 etc.," whether the statement is libelous per se is a question for the jury. <u>Id.</u> at 353–54. The latter

6 is the case here. More specific evidence of damages is not necessary for Plaintiff to withstand

7 summary judgment.

8      IV.    <u>Due Process: Against Mayor Cooper and the City</u>

9      Plaintiff next clams she was deprived of due process when her termination was

10 accompanied by a stigmatizing statement (what is sometimes termed a "stigma-plus" claim).

11      A.  <u>Due Process Liberty Interest</u>

12      Plaintiff does not argue she had a property right in her employment (<u>see</u> Dkt. No. 71 at

13 23); the theory she is proceeding under is that Mayor Cooper's statements in combination with

14 her initial firing deprived her of the liberty interest guaranteed by the 14th Amendment without

15 due process of law, <u>i.e.</u>, a name-clearing hearing. <u>See</u> <u>Roth v. Veterans' Admin. of Gov't of U.S.</u>,

16 856 F.2d 1401 (9th Cir. 1988). "A public employer can violate an employee's rights by

17 terminating the employee if in so doing, the employer makes a charge that might seriously

18 damage the terminated employee's standing and associations in his community or imposes on a

19 terminated employee a stigma or other disability that forecloses his freedom to take advantage of

20 other opportunities." <u>Blantz v. Cal. Dep't of Corrections et al.</u>, 727 F.3d 917, 925 (9th Cir. 2013)

21 (citations and alterations omitted). The "charge" here is made up of the same statements from

22 Mayor Cooper that form the basis of Plaintiff's defamation claim.

23      A slightly different standard applies to statements alleged to violate due process than

24 those alleged to be defamatory.

1    Contrary to the City's argument and Mayor Cooper's argument, <u>WMX Techs., Inc. v.</u>

2    <u>Miller</u>, 80 F.3d 1315, 1319–20 (9th Cir. 1996), does not hold that defamation is a required

3    element of a due process/liberty interest claim, but merely states that ordinary defamation by the

4    state in the <u>absence</u> of government action on the "plus" prong—in which the plaintiff suffers

5    alteration or extinction of a previously recognized right or status (such as termination)—does not

6    deprive the plaintiff of due process. Plaintiff was clearly fired by Mayor Cooper, which suffices

7    to show government action on the plus prong. (<u>See</u> Dkt. No. 52 at 19–20; Dkt. No. 54 at 19.)

8    The statements need not conform to the elements of the state defamation tort:

9    "Accusations of dishonesty or immorality are sufficiently stigmatizing to implicate a liberty

10   interest, but less severe accusations must be analyzed on a case-by-case basis, and allegations of

11   mere incompetence or inability are not sufficient." <u>Blantz v. Cal. Dep't of Corrections et al.</u>, 727

12   F.3d at 925 n.6. Here, Mayor Cooper's statements touched on Plaintiff's trustworthiness and

13   ability to maintain confidentiality—these statements are very similar to accusations of

14   dishonesty. Further, Plaintiff must allege the stigmatizing statements are substantially false, as

15   she has done in her defamation claim. <u>See</u> <u>Campanelli v. Bockrath</u>, 100 F.3d 1476, 1484 (9th

16   Cir. 1996); <u>Codd v. Velger</u>, 429 U.S. 624, 627 (1977). Mayor Cooper's statements in connection

17   with Ms. Humann's termination are sufficiently stigmatizing to withstand summary judgment;

18   whether the statement is stigmatizing is ultimately a question of fact for the jury. <u>See</u>

19   <u>Campanelli</u>, 100 F.3d at 1480.

20   However, a plaintiff's liberty interest is not implicated unless "the government's

21   stigmatizing statements effectively exclude the employee completely from her chosen

22   profession." <u>Id.</u> at 925. "Stigmatizing statements that merely cause reduced economic returns and

23   diminished prestige, but not permanent exclusion from, or protracted interruption of, gainful

24

1    employment within the trade or profession do not constitute a deprivation of liberty." <u>Id.</u> Plaintiff

2    suggests the profession she was engaged in be defined narrowly—human resources

3    professional—while the City points out she has many of the same responsibilities in her current

4    union job that she had with the city and argues that "profession" is defined broadly. (<u>See</u> Dkt.

5    No. 71 at 22–23; Dkt. No. 52 at 19 & n.25.) While the human resources field may be broad

6    enough to accommodate some positions that are not labeled "human resources," the City has not

7    shown as a matter of law that Plaintiff is currently employed in such a human resources position

8    or has been offered such a position.

9        Finally, former Mayor Cooper argues Plaintiff was not deprived of due process unless she

10   requested and was denied a name-clearing hearing, and that she has waived this right by settling

11   her whistleblower claim with the City prior to the hearing. (<u>See</u> Dkt. No. 75 at 10.) There is no

12   published 9th Circuit case on point, but district courts in this Circuit have imposed such a

13   restriction in light of the out-of-Circuit precedent on point. <u>See</u> <u>Reiber v. City of Pullman</u>, 918 F.

14   Supp. 2d 1091, 1102 (E.D. Wash. 2013) (Rice, J.) (citing <u>Quinn v. Shirey</u>, 293 F.3d 315, 322

15   (6th Cir. 2002); <u>Gillum v. City of Kerrville</u>, 3 F.3d 117, 121 (5th Cir. 1993); <u>Winskowski v. City</u>

16   <u>of Stephen</u>, 442 F.3d 1107, 1110 (8th Cir. 2006)). Plaintiff's due process rights were not at issue

17   in the whistleblower proceeding or settlement, and Mayor Cooper does not allege Plaintiff

18   explicitly waived the right to a name-clearing hearing as part of that settlement. Plaintiff did not

19   waive her right to a due process hearing simply because she obtained monetary relief in a

20   circumscribed proceeding that may have incidentally afforded her the opportunity to clear her

21   name.

22

23

24

1      B.  Qualified Immunity for Mayor Cooper

2      The basic law on the process due to government employees who are both terminated and

3 subjected to stigmatizing statements in connection with that termination has been clear since

4 1988.  Roth v. Veteran's Admin., 856 F.2d 1401, 1411 (9th Cir.1988), overruled on other

5 grounds by Garcetti v. Ceballos, 547 U.S. 410 (2006). Former Mayor Cooper is not entitled to

6 qualified immunity on Plaintiff's due process claim.

7      V.     Against the City: Washington Wrongful Termination in Violation of Public Policy

8      The City moves to dismiss Plaintiff's wrongful discharge claim in addition to opposing

9 Plaintiff's request to amend the Complaint. Plaintiff's requested amendments concerns the facts

10 that are at issue in the wrongful discharge claim.

11      A.  Leave to Amend Complaint

12      Plaintiff's request to amend her complaint is past the Court's deadline for amended

13 pleadings, so she must show good cause for failing to adhere to the deadline. See Fed. R. Civ. P.

14 16(b)(4). Plaintiff candidly admits the need to clarify the complaint only occurred to her counsel

15 during preparation for opposing Defendants' request for summary judgment. (See Dkt. No. 79 at

16 2.) However, the requested amendments are quite narrow and technical. The operative facts

17 giving rise to a wrongful discharge claim with respect to Mayor Cooper's actions were pled in

18 detail in the original complaint. The proposed amendments merely clarify that Plaintiff is asking

19 the Court to apply Washington's wrongful discharge laws to the predicate termination as well as

20 later acts. Plaintiff's original complaint put the City on notice that they needed to defend against

21 precisely this sort of claim, and there can be no prejudice where the discovery needed for this

22 claim was an integral part of defending against other claims. In this case, the Court will exercise

23

24

ORDER ON MOTION TO AMEND, MOTIONS
FOR SUMMARY JUDGMENT- 19

1    its discretion to accept an amendment that has merely a formal legal effect and can cause no

2    prejudice.

3         B.   Elements of Wrongful Termination Claim

4         To prevail on a wrongful discharge claim, a plaintiff must show: (1) the existence of a

5    clear public policy (the clarity element); (2) that discouraging the conduct in which he engaged

6    would jeopardize the public policy (the jeopardy element); (3) that the public-policy-linked

7    conduct caused the dismissal (the causation element); and, finally, (4) that the defendant has not

8    offered an overriding justification for the dismissal (the absence of justification element).

9    Cudney v. ALSCO, Inc., 172 Wn.2d 524, 529 (2011). As explained further below, summary

10   judgment for the City is not warranted on this claim as to either Mayor Cooper's or Mayor

11   Earling's termination decisions.

12        1.   Clarity

13        Plaintiff argues there is a clear public policy 1) prohibiting retaliation against local

14   government employees who report corruption and misuse of public funds, and 2) prohibiting

15   retaliation against a former public employee for filing a whistleblower complaint. (Dkt. No. 69 at

16   12.) To determine as a matter of law whether there is a clear public policy, courts should inquire

17   whether the employer's conduct contravenes the letter or purpose of a constitutional, statutory, or

18   regulatory provision or scheme. Prior judicial decisions may also establish the relevant public

19   policy. However, courts should proceed cautiously if called upon to declare public policy absent

20   some prior legislative or judicial expression on the subject. Dicomes v. State, 113 Wn.2d 612,

21   617 (1989) (emphasis and citation omitted). Washington cases have previously recognized clear

22   public policy condemning retaliation against government employee whistleblowers, see id. at

23   618-19, so Plaintiff's additional specificity does not stand in the way of the clarity element.

24

1          2.   Jeopardy

2          The City argues Plaintiff cannot show jeopardy because the public policy is already

3    adequately addressed by RCW 42.41 and Personnel Policy 10.3. (Dkt. No. 52 at 21.) Plaintiff

4    counters that neither source of law provides for emotional distress damages. (Dkt. No. 69 at 13–

5    14.) The existence of administrative remedies does not necessarily foreclose the availability of

6    more complete remedies under the wrongful discharge tort. See Piel v. City of Federal Way, 177

7    Wn.2d 604, 616 (2013). One way that administrative remedies can be lacking compared to the

8    wrongful discharge tort is the availability of damages for emotional distress. See id. at 613

9    (citing Smith v. Bates Technical College, 139 Wn.2d 793, 805 (2000)). Thus, Plaintiff has

10   demonstrated the jeopardy element in spite of the administrative remedy.

11         3.   Causation

12         A plaintiff demonstrates causation by showing the unlawful reason for discharge was a

13   "substantial factor" in the employer's decision. Wilmont v. Kaiser Aluminum & Chem. Corp.,

14   118 Wn.2d 46, 71–72 (1991). Viewing the evidence in the light most favorable to Plaintiff,

15   summary judgment is not warranted on causation for either Mayor Cooper's or Mayor Earling's

16   termination decisions because of the context, timing, and potentially pretextual claim for both

17   decisions.

18         4.   Absence of Justification

19         Defendants have not shown as a matter of law that there was an absence of justification

20   for the actions; as the Parties' briefing indicates, this factor is subject to numerous disputed facts

21   better suited to a fact finder at trial.

22

23

24

VI.    <u>Hearsay Argument</u>

The Court found it unnecessary to rely on the statements former Mayor Cooper challenges as hearsay for the purposes of this motion, so the Court will not reach the issue at this time. (<u>See</u> Dkt. No. 79 at 1–2.)

**Conclusion**

Since Plaintiff concedes she has no First Amendment retaliation claim as to former Mayor Cooper, summary judgment is GRANTED to Mayor Cooper on that claim. In all other respects, Mayor Cooper's Motion is DENIED because the claims turn on genuinely disputed facts. Mayor Earling's Motion is GRANTED on the basis of qualified immunity for the First Amendment claim. The City's Motion is DENIED in full because Plaintiff has shown the existence of numerous genuinely disputed material facts. Plaintiff's request to make minor amendments to the complaint is GRANTED.

The clerk is ordered to provide copies of this order to all counsel.

Dated this 19th day of August, 2014.

Marsha J. Pechman
Chief United States District Judge

ORDER ON MOTION TO AMEND, MOTIONS
FOR SUMMARY JUDGMENT- 22